UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH ROHRBOUGH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:07CV00996 ERW |
| | ) | |
| LUTHER HALL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants' Motion for Summary Judgment [doc. #39].

**I.     PROCEDURAL BACKGROUND**

Kenneth Rohrbough ("Plaintiff") brought this action against Luther Hall and Anna Kimble (collectively, "Officer Defendants").  He also seeks relief from the members of the Board of Police Commissioners for the City of St. Louis; Mary Nelson, Susan Rollins, Bartholomew Saracino, Francis Slay, and Mark Smith (collectively, "Commissioner Defendants").  Finally, he named "John Doe" as a defendant, but this individual has not yet been served.  In his Amended Complaint, Plaintiff seeks to recover from the Officer Defendants and John Doe for the excessive use of force in Count I, unlawful seizure in Count II, conspiracy to violate Plaintiff's civil rights in Count III, and false arrest and false imprisonment under Missouri State Law in Count V.  Count IV is brought against Luther Hall and John Doe, and it alleges a claim for assault and battery under Missouri state law.  Finally, Count VI is directed against the Commissioner Defendants and asserts a liability both through the existence of a municipal custom and through failure to instruct

and supervise.  The Officer Defendants and the Commissioner Defendants (collectively, "Defendants") ask that the Court dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 56.

## II.   JOHN DOE

On October 10, 2008, the Court issued an Order to Show Cause, noting that the file contained no proof of service upon John Doe, and ordered Plaintiff to show cause, pursuant to Fed. R. Civ. P. 4(m) why this action should not be dismissed as to this individual.  Plaintiff responded, stating that "[a]s of this date, plaintiff has not been able to identify or make personal service upon the defendant identified [as John Doe]."

The Federal Rules state that defendants who are not served within 120 days of the filing of the complaint shall be dismissed without prejudice unless "the plaintiff shows good cause for the failure."  Fed. R. Civ. P. 4(m).  While "[t]here is no comprehensive definition of what constitutes good cause sufficient to warrant a mandatory extension under Rule 4(m)," it is clear that Plaintiff has not shown good cause for failing to serve John Doe within 120 days.  *Colasante v. Wells Fargo Corp.*, 81 F.App'x 611, 613 (8th Cir. 2003).  Good cause requires that the Plaintiff show "at least 'excusable neglect' - good faith and some reasonable basis for noncompliance with the rules."  *Id.*  (quoting *Adams v. AlliedSignal Gen. Aviation Avionics*, 74 F.3d 882, 887 (8th Cir. 1996)).  Since Plaintiff has failed to show good cause, the claims against John Doe will be dismissed, without prejudice.

## III.   BACKGROUND FACTS[1]

---

[1] The Court's recitation of the facts is taken from Defendants' Motion for Summary Judgment [doc. #39], Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment [doc. 345] and Plaintiff's Memorandum in Opposition to Board of Police Commissioners' Motion for Summary Judgment [doc. #47].

Plaintiff is a veteran of the United States Marine Corps.  In 1980, Plaintiff suffered a traumatic head injury in a car accident.  He was in a coma for three months and suffered extensive brain damage.  As a result of this accident, Plaintiff has profound difficulty expressing himself. This difficulty has been described as aphasia.  It affects Plaintiff's ability to receive and express communication, both written and verbal.  He is unable to read or write proficiently, has a speech impediment, and speaks with a slur.  Additionally, Plaintiff suffers from a seizure disorder, depression and anxiety.  He receives treatment, including medications, for these problems.

In 2002, Plaintiff lived in an apartment in north St. Louis near Crown Candy Kitchen and an optometry shop.  On the morning on September 3, 2002, Plaintiff went to the Grace Hill Neighborhood Health Center, free of injuries to his head, face or legs.  Later that day, Plaintiff went to the optometry shop to pick up a pair of prescription glasses.  The prescription was not correct, but he was unable to communicate this to the clerk.  It is unclear from the record whether Plaintiff threw the glasses, breaking them, if he damaged any of the displays in the store, or if he just left with the glasses without paying.  Regardless, it appears that Plaintiff created a disturbance, if not a crime, and left the store.

On that date, the Officer Defendants, police officers with the St. Louis Metropolitan Police Department, drove to the area of 2800 North 14th Street in St. Louis to have lunch at Crown Candy Kitchen.  They were in uniform, driving a marked police car.  After exiting their vehicle near Crown Candy Kitchen, the Officer Defendants were approached by a woman coming from the optometry shop, who pointed to Plaintiff as he was walking away from the shop.  The Officer Defendants state that she told them that Plaintiff had just destroyed some equipment in her office.

Defendants state that Defendant Luther Hall ("Hall") went after Plaintiff while Defendant Anna Kimble ("Kimble") stayed with the woman.  The Officer Defendants state that Hall told Plaintiff to stop, whereupon Plaintiff turned toward Hall "like he wanted to fight" and put his hands up "like a boxer."  The Officer Defendants state that Plaintiff made a fist and started swinging at Hall as he approached Plaintiff.  The Officer Defendants assert that Hall restrained and arrested Plaintiff, holding one of Plaintiff's arms, putting it behind his back, forcing him to the ground and placing him in handcuffs.  Hall testified that this took only "a few seconds."  He states that he sat Plaintiff on the curb and called for a supervisor and an ambulance.  In his incident report, he states that Plaintiff "sustained a small laceration to his left cheek and nose."  The Officer Defendants state that neither of them hit Plaintiff.  Kimble testified that she did not observe any police officers strike Plaintiff, and Hall testified that he did not observe any other police officer touch Plaintiff.

Plaintiff's version of events differs from that presented by Defendants.[2]  Plaintiff states that he observed four or five police officers at Crown Candy Kitchen.[3]  Plaintiff says that two or three officers followed him, and that Hall shouted at him.  Plaintiff states that he then stopped, turned around, and said "Good morning, officer."  Plaintiff says that he did not have a fist made, did not assume a fighting stance, and that Hall swung at him with his fists, striking him.  Plaintiff says that Hall then pushed him, put him on the ground, landed on top of him, and handcuffed him.  Plaintiff says that after he was handcuffed he did not push or fight, but that a white officer hit him eight to

---

[2] The Court notes that Plaintiff made some contradictory statements in his deposition.  The facts adopted by the Court are those statements that corroborate Plaintiff's claims.

[3] This is consistent with the testimony of the woman from the optometry store, who stated that three officers went after Plaintiff while Kimble stayed with her.

ten times  with a "club."[4]  Plaintiff describes the individual who hit him as a white male officer,

approximately  6'1" or 6'2", 220 lbs, who was wearing black boots.

Plaintiff was arrested for individual peace disturbance and resisting arrest, was

immediately transported to SouthPointe Hospital, where he was discharged three days later, on

September 6, 2002.  His medical records state that he had a subconjunctival hemorrhage on his

left eye and orbital swelling, a fractured eighth rib, a 1.5 centimeter left infraorbital laceration that

required sutures, a 1 centimeter right parietal laceration that required sutures, a 2.5 centimeter left

maxillary laceration that required sutures, and a 3 centimeter abrasion on his left knee.

It is the policy of the St. Louis Metropolitan Police Department that "[o]fficers shall use

the least amount of force necessary to effectively bring an incident under control, while protecting

the lives of the officers and others."  The policy also states that "[o]fficers may use non-deadly

force to protect themselves or others from physical harm, to restrain or subdue a resistant

individual, or to bring any unlawful situation safely and effectively under control."  Defendants

have introduced evidence that officers receive training regarding arrest procedures, including

force techniques.  Additionally, the Officer Defendants received training regarding dealing with

mentally challenged individuals.

In the five year period before the incident in question, the St. Louis Metropolitan Police

Department received 322 complaints of "physical abuse."  Only one of these complaints was

sustained.  Complaints such as these only reach the Commissioner Defendants if:

---

[4] Plaintiff's statement that he did not push or fight after being handcuffed is corroborated
by Hall, who testified that "he was fidgety . . . [but] there was no more aggression."

1.      the Inspector of Polices imposes a punishment of more than fifteen (15) days suspension

and the Chief of Police agrees with the punishment.  In instances such as these, the matter

would then be referred to the Board for its approval, or

2.      a non-probationary police officer requests a Board trial.

Unless one of these two situations occur, the Inspector of Police is the final arbiter of these

complaints.

The Commissioner Defendants never acted to get this information.  Captain Hayden

testified at his deposition that he has never been asked by the Board or any of its members for any

Internal Affairs file that did not get past the Inspector of Police.  He also stated that neither the

Board nor any of its members had ever requested even statistical information on investigations or

complaints.

## IV.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for

summary judgment only if all of the information before the court shows "there is no genuine issue

as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Supreme

Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored

procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are

designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327

(quoting Fed. R. Civ. P. 1).  "By its very terms, [Rule 56(c)(1)] provides that the mere existence

of *some* alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no *genuine* issue of

*material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Material facts are

those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 256-57. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a

gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

## V. DISCUSSION

### A. *INCONSISTENT STATEMENTS BY PLAINTIFF*

The Court notes at the outset that Plaintiff made some inconsistent statements in his deposition. It appears to the Court that these inconsistent statements are due to Plaintiff's aphasia. It affects Plaintiff's ability to receive and express communication, both written and verbal. While these inconsistencies may affect Plaintiff's credibility at trial, the Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris*, 210 F.3d at 847. For the purposes of resolving Defendants' Motion for Summary Judgment, the Court will consider Plaintiff's statements that corroborate his claims, and disregard those statements that appear to result from Plaintiff's aphasia.

### B. *EXCESSIVE USE OF FORCE & FAILURE TO INTERVENE*

In Count I of his Complaint, Plaintiff seeks to recover from the Officer Defendants for the excessive use of force and their failure to intervene. A claim of excessive force that arises from an arrest is to be analyzed under the objective reasonableness standard of the Fourth Amendment. *Graham v. Conner*, 490 U.S. 386, 395 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal punctuation and citations omitted). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* As a result, this

analysis requires that a court pay close attention to the particular facts of the case. *Id.* The Court must consider factors such as the severity of the suspected crime, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting or attempting to evade arrest. *Id.* This inquiry is objective, questioning "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

Even if an officer does not use force, "[a]n officer who fails to intervene to prevent a fellow officer's excessive use of force may be liable under 42 U.S.C. § 1983." *Fogarty v. Gallegos*, 523 F.3d 1147, 1163 (10th Cir. 2008). A defendant can be liable for failure to intervene under two different theories. *Torres-Rivera v. O'Neill-Cancel*, 406 F.3d 43, 51-52 (1st Cir. 2005). The first theory posits whether the officer was "indeed present at [Plaintiff's] arrest with an opportunity to prevent the excessive use of force." *Fogarty*, 523 F.3d at 1163. Alternatively, an officer can be liable where they are "instrumental in assisting the actual attacker or aggressor to place the victim in a vulnerable position." *Torres-Rivera*, 406 F.3d at 52. However, it is important to note that the officer must have a "'realistic opportunity' to prevent the attack." *Id.* (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203 (1st Cir. 1990)). Where an attack only lasts a few seconds, non-participating bystander officers do not have a "'realistic opportunity' to prevent the attack." *Id.*

Plaintiff has introduced no evidence that Kimble used force against Plaintiff, and even stated in his deposition that the female officer did not touch him. Accordingly, the Court will dismiss Plaintiff's claim against Kimble for the claimed use of excessive force. Plaintiff also seeks to recover from Kimble for failure to intervene. It is undisputed that Kimble was not near Plaintiff when he was arrested. Because of her location, Defendants have presented evidence that Kimble

did not have a "realistic opportunity" to prevent the attack.  This satisfies their initial burden on summary judgment, and Plaintiff must now set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue.  *Anderson*, 477 U.S. at 256-57.  Plaintiff has failed to introduce evidence that the attack lasted sufficient time for Kimble to respond and stop the attack.  Summary judgment is proper.  *See Olson*, 943 F.2d at 883.  Plaintiff's claim against Kimble for failure to protect will be dismissed, with prejudice.

Plaintiff also seeks to recover from Hall on the theories of excessive use of force and failure to protect.  Plaintiff's injuries were not minor.  He suffered a subconjunctival hemorrhage on his left eye and orbital swelling, a fractured eighth rib, a 1.5 centimeter left infraorbital laceration that required sutures, a 1 centimeter right parietal laceration that required sutures, a 2.5 centimeter left maxillary laceration that required sutures, and a 3 centimeter abrasion on his left knee.  These injuries are inconsistent with Hall's version of the events, in which he was able to place Plaintiff in handcuffs in the matter of only "a few seconds" by holding one of Plaintiff's arms, putting it behind his back and forcing him to the ground.  Hall testified that he did not observe any other police officer touch Plaintiff.  This evidence is sufficient to show a genuine issue of material fact as to whether Hall used force against Plaintiff.  Whether that force was excessive requires consideration of several factors, listed above.  *Graham*, 490 U.S. at 395.  While the suspected crime was minor property damage, the extent of the crime was not known by Hall when he initiated the arrest.  There is conflicting evidence as to whether Plaintiff posed an immediate threat to the safety of the officer or others, and whether actively resisted or attempted to evade arrest.  *Id.*  Summary judgment is not appropriate because of the existence of these genuine issues of material fact.

Additionally, the Court finds that summary judgment should not be granted on Plaintiff's claim against Hall for failure to intervene.  Plaintiff has presented sufficient evidence that there may have been another officer present at the scene who beat Plaintiff.  If this happened, Officer Hall may be liable under 42 U.S.C. § 1983 for his failure "to intervene to prevent a fellow officer's excessive use of force."  *Fogarty*, 523 F.3d at 1163.  The evidence indicates that Hall could be liable for his failure to intervene.

Under the first theory on recovery for failure to intervene, Hall may be liable if he was "indeed present at [Plaintiff's] arrest with an opportunity to prevent the excessive use of force." *Fogarty*, 523 F.3d at 1163.  In his deposition, Hall testified that after he put Plaintiff in handcuffs he waited by him for a additional officers and EMS to arrive.  As a result, if these injuries were caused by another officer, the evidence demonstrates that Hall was present and may have had the opportunity to prevent the excessive use of force because of his proximity to Plaintiff.  The requirement that a defendant have a "'realistic opportunity' to prevent the attack" does not protect Hall from liability on this summary judgment motion because of his close proximity to Plaintiff and the disputed duration of the attack.  *Torres-Rivera*, 406 F.3d at 52 (quoting *Gaudreault*, 923 F.2d at 203).

Defendants also assert that these claims should be dismissed because the injuries Plaintiff suffered were not permanent.  This argument is flawed because there is no requirement that an injury be permanent for it to be actionable.  Instead, a plaintiff must show "something beyond minor injuries" and that the injury is supported by medical records.  *Hanig v. Lee*, 415 F.3d 822, 824 (8th Cir. 2005); *Foster v. Metropolitan Airports Com'n*, 914 F.2d 1076, 1082 (8th Cir. 1990).  The presence of minor injuries is "relevant in determining the reasonableness of the force used to affect an arrest."  *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1007 (8th Cir.

2003). Plaintiff's injuries were not minor, and a fractured rib certainly constitutes a "long-term injury." *Foster*, 914 F.2d at 1082; *see also Nicolaison v. Brown*, 2007 WL 781858, at *1 (D. Minn. March 13, 2007) (dismissing claim because no evidence of fracture or misalignment of plaintiff's hip).

The Court also finds that Hall is not entitled to qualified immunity.[5] Two inquiries are necessary in determining whether an individual is protected by qualified immunity. *Weaver v. Lincoln County, Nebraska*, 388 F.3d 601, 605 (8th Cir. 2004); *see Saucier v. Katz*, 533 U.S. 194, 201 (2001). The threshold question the Court must ask is "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201. The next step in the analysis is to ask if "the right was clearly established . . . in light of the specific context of the case." *Id.* As discussed above, the Court finds sufficient evidence that Hall may have violated Plaintiffs' constitutional rights.

The Officer Defendants assert that qualified immunity is appropriate because there is no clearly established law indicating that police officers who have no personal involvement in the alleged physical abuse violate that individual's rights. This assertion is unsupported. It is well established that police officers may be liable under 42 U.S.C. § 1983 for both their own use of force, *see Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003), and for their failure to intervene to stop another officer's use of force. *See Putnam v. Gerhoff*, 639 F.2d 415, 423-24 (8th Cir. 1981); *Dukes v. Miami-Dade County*, 232 F.App'x 907, 913 (11th Cir. 2007). Plaintiff's right under the Fourth Amendment to be free from the excessive use of force was

---

[5] In their Motion, the Officer Defendants only discuss qualified immunity as it relates to Plaintiff's claims of excessive use of force and failure to intervene. As a result, the Court will not apply this analysis to Plaintiff's other claims.

clearly established at the time of the alleged incident.  Therefore, Hall's motion for summary judgment on grounds of qualified immunity will be denied.  As a result, the Court will grant summary judgment on Plaintiff's claims of excessive use of force and failure to protect against Kimble, however, these claims remain pending against Hall.

### C.   UNLAWFUL SEIZURE

Plaintiff seeks to recover from the Officer Defendants for unlawful seizure in Count II, however, Plaintiff does not respond to Defendants' Motion for Summary Judgment on this claim. The initial burden of proof in a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa*, 838 F.2d at 273.  Defendants have satisfied this burden. Plaintiff has failed to set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 256-57.  By failing to respond to Defendant's arguments in their Motion for Summary Judgment, Plaintiff has failed  "to produce such evidence, [and] summary judgment is proper." *See Olson*, 943 F.2d at 883.  Accordingly, the Court will dismiss Count II, with prejudice.

### D.   CONSPIRACY

Plaintiff has brought Count III against the Officer Defendants, alleging conspiracy to violate his civil rights.  To succeed on a conspiracy claim under 42 U.S.C. § 1983, "a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff." *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) (citing *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999)).  As discussed above, Plaintiff has introduced evidence upon which a jury may find that his constitutional rights have

been violated, when he was injured as a result of Hall's overt actions.  The first unanswered question is whether the acts of Hall were in furtherance of a conspiracy.  The Court will now resolve whether "the defendant conspired with others to deprive [Plaintiff] of his constitutional rights."  *Id.*

Upon an initial inquiry, the pursuit of Plaintiff by Hall was practically instantaneous from the time Hall learned that Plaintiff was leaving the location of the store. where it was claimed that he caused some damage or disturbance.  There is no evidence that Hall conspired with anyone before engaging in pursuit of Plaintiff.  However, the analysis is more complicated because the issue of conspiracy is not whether Hall conspired with others before initiating the arrest, but whether the evidence now before the Court shows  that the Officer Defendants "reached an agreement to deprive the plaintiff of constitutionally guaranteed rights."  *White v. McKinley*, 519 F.3d 806, 816 (8th Cir. 2008).  The evidence Plaintiff has presented on his conspiracy claim is largely circumstantial.  However, the Eighth Circuit has noted that "the elements of conspiracy are rarely established through means other than circumstantial evidence."  *Id.*  (quoting *Westborough Mall, Inc. v. City of Cape Girardeau*, 693 F.2d 733, 743 (8th Cir. 1982)).  Plaintiff has introduced evidence that there was either another officer at the scene whose presence and acts have been concealed, or that Hall used much more force than he stated in either his report or his deposition.  Additionally, the Court notes that the deposition testimony of Captain Hayden of the Internal Affairs Division.  Captain Hayden stated that he could not recall any instance in which a police officer either reported excessive force by another officer, or corroborated a citizen's claim of excessive use of force.

It is well established that "summary judgment is only warranted when the evidence is so one-sided as to leave no room for any reasonable difference of opinion as to how the case should

be decided." *Id.* The evidence in this action does not meet this standard. To dismiss, the Court "must be convinced that the evidence presented is insufficient to support any reasonable inference of a conspiracy." *Id.* In this instance, Plaintiff has submitted evidence that would support a reasonable inference of conspiracy. A jury must hear these claims because "there is a possibility the jury could infer from the circumstances a 'meeting of the minds' or understanding among the conspirators to achieve the conspiracy's aims." *White*, 519 F.3d at 816 (quoting *Larson by Larson v. Miller*, 76 F.3d 1446, 1458 (8th Cir. 1996)). Accordingly, Plaintiff's conspiracy claim under 42 U.S.C. § 1983 against Hall and Kimble remains pending before the Court.

## E.   FALSE ARREST AND FALSE IMPRISONMENT

In Count V, Plaintiff seeks to recover from the Officer Defendants for false arrest and false imprisonment under Missouri State Law, however, Plaintiff does not respond to Defendants' Motion for Summary Judgment on these claims. The initial burden of proof in a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa*, 838 F.2d at 273. Defendants have satisfied this burden. Plaintiff fails to set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 256-57. By failing to respond to Defendant's arguments in their Motion for Summary Judgment, Plaintiff has failed "to produce such evidence, [and] summary judgment is proper." *See Olson*, 943 F.2d at 883. Accordingly, the Court will dismiss Count V, with prejudice.

## F.   ASSAULT AND BATTERY

Count IV is brought against Hall, and it alleges a claim for assault and battery under Missouri state law. Defendants contest this Count on the basis of both official immunity and the public duty doctrine. The Court will consider each of these doctrines separately.

### 1.    *Official Immunity*

Under this doctrine, public employees are protected "from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Southers v. City of Farmington*, 2008 WL 2346191, at *3 (Mo. banc June 10, 2008).  This immunity does not apply to "torts committed when acting in a ministerial capacity." *Id.*  As a result, the Court must first inquire into whether Hall's acts were discretionary or ministerial.  "Whether an act is discretionary or ministerial depends on the 'degree of reason and judgment required' to perform the act." *Davis v. Lambert-St. Louis Intern. Airport*, 193 S.W.3d 760 (Mo. banc 2006).  A ministerial act "is one 'of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." *Southers*, 2008 WL 2346191, at *3 (quoting *Kanagawa v. State*, 685 S.W.2d 831, 835 (Mo. banc 1985)).  Conversely, discretionary acts require "the exercise of reason in the adaption of means to an end and discretion in determining how or whether an act should be done or a course pursued." *Id.*  This inquiry must be completed "on a case-by-case basis, considering: (1) the nature of the public employee's duties; (2) the extent to which the act involves policy making or professional judgment; and (3) the consequences of not applying official immunity." *Id.*

It is clear to the Court that the actions Plaintiff contests are discretionary in nature, and that this defense is applicable.  An officer's decision to stop a suspect, to use force to effectuate an arrest, and the determination of what amount of force to use are all discretionary acts. *See Parris v. Huttie*, 2007 WL 2434058, at *9 (W.D. Mo. 2007).  However, it is important to remember that employees may still be liable for discretionary acts if their "conduct is willfully

16

wrong or done with malice or corruption." *Southers*, 2008 WL 2346191, at *3 (citing *Schooler v. Arrington*, 81 S.W. 468, 469 (1904)).  This action falls under this exception to official immunity.

Plaintiff has introduced evidence indicating that Hall's acts were "willfully wrong or done with malice or corruption." *Southers*, 2008 WL 2346191, at *3 (citing *Schooler*, 81 S.W. at 469).  Malice exists when a defendant "wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Parris*, 2007 WL 2434058, at *10.  Acts are wanton if they are "done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. banc 1986) (internal citation omitted). Finally, bad faith is "a dishonest purpose, moral obiquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Jones-El v. Roper*, 2008 WL 2682600, at *1 (E.D. Mo. June 27, 2008) (quoting *Blue v. Harrah's North Kansas City, LLC*, 170 S.W.3d 446, 479 (Mo. Ct. App. 2005)).  The facts in this action are disputed, and produce a question of fact as to whether Hall acted willfully wrong or acted with malice or corruption when he either used force against Plaintiff or failed to intervene to protect Plaintiff from another officer.  Summary judgment is not appropriate on this basis.

**2.**     ***Public Duty Doctrine***

Defendants also assert that Hall is protected from liability on Plaintiff's state law claims through application of the public duty doctrine.  Under this doctrine, "a public employee is not civilly liable for a breach of duty owed to the general public, rather than [to] a particular individual." *Southers*, 2008 WL 2346191, at *4.  "This exception exists when injury to a particular, identifiable individual is reasonably foreseeable as a result of a public employee's

breach of duty." *Id.* at *5.  Additionally, this doctrine also will not protect employees whose acts are "in bad faith or with malice." *Id.* (citing *Jackson v. City of Wentzville*, 844 S.W.2d 585, 588 (Mo. Ct. App. 1993)).

The public duty doctrine does not protect Hall in this instance.  The Court finds that Plaintiff has introduced sufficient evidence to present a jury issue as to whether Hall's actions were "in bad faith or with malice." *Id.* (citing *Jackson v. City of Wentzville*, 844 S.W.2d 585, 588 (Mo. Ct. App. 1993)).  The facts in this action are disputed, and produce a question of fact as to whether Hall acted intentionally and with malice when he either used force against Plaintiff or failed to intervene to protect Plaintiff from another officer.  As a result, summary judgment is not appropriate on the basis of the public duty doctrine.

## G.    *CLAIMS AGAINST COMMISSIONER DEFENDANTS*

Municipalities cannot be liable "under § 1983 on a respondent superior theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  However, liability can exist where a "policy or custom is the moving force behind a constitutional violation" or where training procedures or officer supervision is inadequate. *See Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th Cir. 1991); *Larkin v. St. Louis Housing Auth. Dev. Corp.*, 355 F.3d 1114, 1117 (8th Cir. 2004) Count VI is directed against the Commissioner Defendants based on both a municipal custom permitting excessive force, a failure to train and a failure to supervise.  The Court will consider each theory separately.

## 1.    *Municipal Custom Permitting Excessive Force*

A municipality may be liable where a policy or custom of the municipality encourages the excessive use of force to exist.  The Eighth Circuit has declared that the terms "policy" and "custom" are not used interchangeably. *See Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir.

1999).  "[A] 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters."  *Id.*  Plaintiff does not allege the presence of an official policy, and instead asserts that a "custom is the moving force behind [the] constitutional violation".  *Wedemeier*, 931 F.2d at 26.  To prove the existence of a "custom" a plaintiff must demonstrate:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
> (3) Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entity's custom, i.e., [proof] that the custom was the moving force between the constitutional violation.

*Id.* (quoting *Ware v. Jackson County*, 150 F.3d 873, 880 (8th Cir. 1998)).

To make a cognizable claim under this theory, Plaintiff must "show that [the Commissioner Defendants] had notice of prior incidents of police misconduct and had deliberately failed to act on this knowledge."  *Harris v. City of Pagedale*, 821 F.2d 499, 504 (8th Cir. 1987). Defendants have demonstrated that there is no genuine issue of material fact over whether the Commissioner Defendants had notice.  The burden then shifts to Plaintiff to set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue.  *Anderson*, 477 U.S. at 256-57. While Plaintiff has introduced evidence of numerous complaints of excessive use of force that have been filed against officers, Plaintiff has introduced no evidence that the Commissioner Defendants had notice of these complaints.  Conversely, Plaintiff has produced evidence that the Commissioner Defendants had <u>no notice</u> of these complaints.  Because Plaintiff has not presented any evidence that the Commissioner Defendants had notice, summary judgment is proper on Plaintiff's claim against the Commissioner Defendants for the existence of a municipal custom.  *See Olson*, 943 F.2d at 883.

2.      *Failure to Train*

A municipality may be liable for deficient policies for training police officers where (1) the municipality had notice its training practices are inadequate, (2) the municipality's failure to train in a relevant respect evidences a deliberate indifference to the rights of others, and (3) the alleged deficiency in the municipality's training procedures actually caused the plaintiff's injuries. *See Larson by Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989).

There are two ways in which a defendant may be on notice that its training practices are inadequate. The first exists where the failure to train "is so likely to result in a violation of constitutional rights that the need for training is patently obvious." *Larkin*, 355 F.3d at 1117 (quoting *S.J. v. Kansas City Public School Dist.*, 294 F.3d 1025, 1029 (8th Cir. 2004)). Under this theory, a Plaintiff must demonstrate that "in light of the duties assigned to specific officers or employees, the need for more or different training is so obvious and inadequacy so likely to result in the violation of constitutional rights that the policymakers of the city could reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio*, 489 U.S. at 390. Alternatively, the Commissioner Defendants may be held to be on notice if "a pattern of misconduct indicates that the [Commissioner Defendants'] responses to a regularly recurring situation are insufficient to protect . . . constitutional rights." *Id.*

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa*, 838 F.2d at 273. Defendants have satisfied this burden, demonstrating that there is no genuine issue of material fact over whether the Commissioner Defendants had notice. The burden then shifts to Plaintiff to set forth affirmative evidence and

specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 256-57.

While Plaintiff has introduced evidence of numerous complaints of excessive use of force that

have been filed against officers, Plaintiff has introduced no evidence that the Commissioner

Defendants had notice of these complaints. Conversely, Plaintiff has produced evidence that the

Commissioner Defendants had <u>no notice</u> of these complaints. Because Plaintiff has not presented

any evidence that the Commissioner Defendants had notice, summary judgment is proper on

Plaintiff's claim against the Commissioner Defendants for failure to train. *See Olson*, 943 F.2d at

883.

### 3.      *Failure to Supervise*

Municipalities may be liable under 42 U.S.C. § 1983 if they fail to properly supervise the

employee who caused a deprivation of constitutional rights. *See Andrews v. Fowler*, 98 F.3d

1069, 1078 (8th Cir. 1996). "The standard of liability for failure to supervise is demonstrated

deliberate indifference or tacit authorization of the offensive acts." *Tilson v. Forrest City Police

Dept.*, 28 F.3d 802, 807 (8th Cir. 1994). Tacit authorization is present where a plaintiff shows

"that the official at least implicitly authorized, approved[,] or knowingly acquiesced in the

unconstitutional conduct of the offending employees." *Shorts v. Bartholomew*, 255 F.App'x 46,

54 (6th Cir. 2007) (quoting *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir.

1989)). Conversely, deliberate indifference is shown where a plaintiff presents evidence "that a

municipal actor disregarded a known or obvious consequence of his action [or inaction]." *Board

of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410 (1997).

The Court finds that Plaintiff has met his burden of establishing facts upon which a

reasonable jury could find deliberate indifference by the Commissioner Defendants. In the five

year period before the incident in question, the St. Louis Metropolitan Police Department

received 322 complaints of "physical abuse."  Only one of these complaints was sustained.

Complaints of physical abuse only reach the Commissioner Defendants if:

1.   the Inspector of Polices imposes a punishment of more than fifteen (15) days suspension

and the Chief of Police agrees with the punishment.  In instances such as these, the matter

would then be referred to the Board for its approval, or

2.   a non-probationary police officer requests a Board trial.

Unless one of these two situations occur, the Inspector of Police is the final arbiter of these

complaints.

The Commissioner Defendants never sought this information.  Captain Hayden testified at

his deposition that he has never been asked by the Board or any of its members for any Internal

Affairs file that did not get past the Inspector of Police.  He also stated that neither the Board nor

any of its members had ever requested even statistical information on investigations or complaints.

For supervisory liability to be imposed, "[t]he supervisor must know about the conduct

and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see."

*Ottman v. City of Independence, Mo.*, 341 F.3d 751, 761 (8th Cir. 2003) (quoting *Ripson v.*

*Alles*, 21 F.3d 805, 809 (8th Cir. 1994)).  In this case, it appears that the Board of Police

Commissioners for the City of St. Louis has either intentionally or unwittingly created an

insulating barrier which prevents notice of complaints from reaching the Commissioner

Defendants.  This is tantamount to turning "a blind eye" which can be the basis for supervisory

liability under 42 U.S.C. § 1983.  *See, e.g. Kahle v. Leonard*, 477 F.3d 544, 551-51 (8th Cir.

2007).

This evidence is sufficient to survive Defendants' Motion.  A reasonable jury could find

that the Commissioner Defendants failure to inquire into citizen complaints indicates a lack of

22

supervision.  This evidence is sufficient for a reasonable jury to find that the Commissioner

Defendants are deliberately indifferent to the risk that officers are using excessive force.  There

may be an "obvious consequence of" the Commissioner Defendants' inaction, such that a jury

could find that the Commissioner Defendants' failure to supervise was the proximate cause of the

violation of Plaintiff's rights.  *Board of Comm'rs of Bryan County*, 520 U.S. at 410.  As a result,

the Court will not grant summary judgment on Plaintiff's claim against the Commissioner

Defendants for their failure to supervise.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [doc. #39]

is **GRANTED in part,** and **DENIED, in part.**  The Court will **DISMISS, with prejudice,**

Count I against Kimble and Counts II and V against Hall and Kimble.  Still pending before the

Court are Count I, for excessive use of force and failure to intervene against Hall, Count III, for

conspiracy, against both Hall and Kimble, Count IV, against Hall, for assault and battery under

Missouri state law, and Count VI, for failure to supervise, against the Commissioner Defendants.

**IT IS FURTHER ORDERED** that all claims against Defendant John Doe are

**DISMISSED, without prejudice.**

Dated this 23rd Day of October, 2008.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE