UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KENNETH ROHRBOUGH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:07CV00996 ERW |
| ) | |
| LUTHER HALL, et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the Amended Motion to Unseal Document filed by Intervenors Robert Patrick and the St. Louis Post-Dispatch, LLC [doc. #121]. The Court heard arguments on this Motion from Intervenors and the parties at a hearing held on May 17, 2010.

Intervenors Robert Patrick and the St. Louis Post-Dispatch, LLC (collectively, "Intervenors") bring this Motion seeking access to Plaintiff's Exhibit 18 ("the Exhibit"), a summary of Internal Affairs complaints filed with the St. Louis City police department between September 3, 1999 and September 3, 2002 that contain allegations of excessive use of force, police brutality, abusive conduct, assault, and battery. The Exhibit was admitted into evidence at the trial of Plaintiff's claims, which ended in a mistrial on April 16, 2010. The matter is currently scheduled for a second trial beginning on June 7, 2010. The Exhibit is subject to a protective order pursuant to the Court's Memorandum and Order entered September 18, 2008 [doc. #43], and Intervenors have been refused access to the Exhibit on that basis.

"It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1979). This right is not absolute, however, and courts have

properly denied access, for example, where the records were sought in order to "gratify spite or promote public scandal," where they functioned only as "reservoirs of libelous statements for press consumption," and where they contained "business information that might harm a litigant's competitive standing." *Id.* at 598 (internal quotations and citations omitted). These grounds for denying access notwithstanding, "there is a common law presumption in favor of public access to judicial records," *United States v. McDougal*, 103 F.3d 651, 657 (8th Cir. 1996), the existence of which necessarily places the burden on the party seeking to maintain confidentiality to establish sufficient grounds for prohibiting public access to the record.

This presumption applies with equal force in the face of a protective order, because once an otherwise confidential record is entered into evidence at trial, it becomes part of a presumptively public proceeding. *See, e.g.*, *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 533 (1st Cir. 1993) ("[T]he ordinary showing of good cause which is adequate to protect *discovery material* from disclosure cannot alone justify protecting such material after it has been introduced at trial. This dividing line may in some measure be an arbitrary one, but it accords with long-settled practice in this country separating the presumptively private phase of litigation from the presumptively public.") (emphasis in original); *Littlejohn v. Bic Corp.*, 851 F.2d 673, 680 (3d Cir. 1988) ("It is well established that the release of information in open court is a publication of that information and, if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict its future use.") (internal quotations and citation omitted); *Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009) (Once materials are filed with the court, "the documents have been used in a court proceeding, and consequently the possibility exists that they could influence or underpin the judicial decision and they are therefore presumptively open to public inspection unless they meet the definition of trade secret or other categories of bona fide long-

term confidentiality.") (internal quotations and citations omitted). Although the Eighth Circuit has declined to adopt the "strong presumption of access" standard of other circuits, it has emphasized that "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *United States v. Webbe*, 791 F.2d 103, 106 (8th Cir. 1986) (quoting *Nixon*, 435 U.S. at 599); *see also id.* ("When the concern is the efficient administration of justice and the provision to defendants of fair trials, the consideration of competing values is one heavily reliant on the observations and insights of the presiding judge.") (quoting *Belo Broad. Corp. v. Clark*, 654 F.2d 423, 431 n.18 (5th Cir. 1981)).

As an initial matter, the Court rejects Defendants' argument that the Exhibit should remain confidential because Defendants produced it in reliance on the Court's continued enforcement of the protective order. Defendants had a general obligation to produce relevant information in discovery as set forth in Fed. R. Civ. P. 26(b)(1), not to mention a specific obligation with respect to the Exhibit in that the Court ordered Defendants to produce its contents, and they therefore cannot credibly maintain that their production was somehow conditioned on the entry of the protective order. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 125-26 (2d Cir. 2006) ("[D]efendants cannot be heard to complain that their reliance on the protective order was the primary cause of their cooperation during years of discovery: even without the confidentiality order, I would eventually have ordered that each discoverable item be turned over to the plaintiffs.") (internal quotations, citations, and alterations omitted). The protective order also explicitly states that it "may be modified or amended . . . upon further Order of the Court," further undercutting Defendants' assertion that they believed there was no chance the Exhibit would ever be made public. *See id.* at 126 (provision stating that "This Confidentiality Order shall not

prevent anyone from applying to the Court for relief therefrom" makes it "difficult to see how the defendants can reasonably argue that they produced documents in reliance on the fact that the documents would always be kept secret"); *Littlejohn*, 851 F.2d at 681 n.17 (3d Cir. 1988) ("By the [protective order's] terms, the documents were to be kept confidential 'absent further court order.' The admission of the plaintiff's trial exhibits into the trial record absent a seal constituted such an order."). The Court's entry of the protective order notwithstanding, the possibility that the Exhibit would become public always existed, and Defendants' apparent belief to the contrary provides no legitimate grounds for preserving its confidentiality.

Defendants next claim that allowing Intervenors to access the Exhibit will prejudice their ability to obtain a fair and impartial jury trial, in that Intervenors will publicize its contents and cause potential jurors to be biased against them. Defendants, however, only speculate as to the effect that publication of the Exhibit might have, and hypothetical prejudice is insufficient to justify maintaining the confidentiality of a judicial record. *See United States v. Criden*, 648 F.2d 814, 827 (3d Cir. 1981). Jury selection in the first trial of this matter was not without its difficulties, but a lack of impartial jurors was not an issue, even though those jurors were exposed to several articles published by the St. Louis Post-Dispatch that reported on earlier rulings in this case and were critical of the Board of Police Commissioners. *See id.* ("[I]f the trial court had already experienced difficulty in jury selection, we would be faced with an actual rather than conjectural factor militating against release of the tapes for rebroadcast."); *Webbe*, 791 F.2d at 106-07, 107 n.4 (finding that the potential harm to the defendant's fair trial rights was "actual and not hypothetical" because his "status as a public figure had posed many problems in selecting a jury, with numerous jurors stricken for cause") (internal quotations omitted). Furthermore, although the issues presented in this case are undoubtedly of public importance, the case has not

4

been subject to such intense media scrutiny or public attention that the Court could assume that subsequent publication of the Exhibit would inevitably prejudice the public against Defendants. *See In re Application of Nat'l Broad. Co.*, 635 F.2d 945, 953 (2d Cir. 1980) ("[D]espite the extensive publicity about Abscam that unfortunately accompanied the initial revelations and that was legitimately renewed when the indictments were returned, about half of those summoned for jury selection had no knowledge of Abscam, and only a handful had more than cursory knowledge. Even the intensive publicity surrounding the events of Watergate, very likely the most widely reported crime [of the 1970's], did not prevent the selection of jurors without such knowledge of the events as would prevent them from serving impartially."). In sum, the Court concludes that the potential for prejudice in this case does not justify preserving the Exhibit's confidentiality, and that the opportunity for voir dire examination will adequately serve to eliminate any jurors who have been prejudiced against Defendants by pre-trial publicity. *See Criden*, 648 F.2d at 827 ("The decision of the Supreme Court in [*Chandler v. Florida*, 449 U.S. 560 (1981)] suggests that the appropriate course to follow when the spectre of prejudicial publicity is raised is not automatically to deny access but to rely primarily on the curative device of voir dire examination at the time of any possible retrial.").

Defendants' remaining claim is that the Court should deny Intervenors access in order to protect the privacy rights of the non-party police officers identified in the Exhibit. Intervenors claim that the police officers do not have substantial privacy rights in this matter because they are public figures whose actions should be subject to public scrutiny. The Court does not find that consideration applicable in this case, however, given that the non-party officers' actions are not directly at issue. Plaintiff offers Exhibit 18 as evidence that the Board of Police Commissioners has been deliberately indifferent to officers' use of excessive force, and the identities of the

5

individual officers are irrelevant to that issue. This privacy factor provides sufficient cause for maintaining the confidentiality of the Exhibit, but only insofar as it reveals personally identifiable information about the non-party police officers against whom Internal Affairs complaints were lodged. The additional basic information contained in the complaint summaries does not implicate these privacy concerns, and Defendant has offered no persuasive argument as to why that information should remain confidential given that the Exhibit is presumptively accessible by the public. As such, the Court concludes that Intervenors are entitled to access the Exhibit, but all individually identifiable information pertaining to the subjects of the complaints will be redacted.[1]

Accordingly,

**IT IS HEREBY ORDERED** that Intervenors' Amended Motion to Unseal Document [doc. #121] is **GRANTED, in part** and **DENIED, in part**. Exhibit 18 shall be made available to the public through the Clerk of Court, but all personally identifiable information concerning the subjects of the Internal Affairs complaints summarized therein will be redacted.

Dated this <u>19th</u> Day of <u>May</u>, <u>2010</u>.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

---

[1] The privacy rights of the complainants are not at issue here because their names have already been redacted from the Exhibit. With the exception of the redactions of the names of law enforcement officials and their respective department service numbers pursuant to this Order, all redactions in Exhibit 18 were present when it was entered into evidence at trial.